# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| In re: <br><br> GT ADVANCED TECHNOLOGIES, INC., *et al.*, <br><br> Debtors[1] | ) ) ) ) ) ) ) ) ) | Chapter 11 <br> Case No. 14-11916-HJB <br> Jointly Administered |
| TERA XTAL TECHNOLOGY CORP. and CITIGROUP FINANCIAL PRODUCTS INC., <br><br> Plaintiffs, <br><br> v. <br><br> GT ADVANCED TECHNOLOGIES LIMITED, <br><br> Defendant | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Adversary Proceeding <br> No. 15-01007-HJB |

## **MEMORANDUM**

Pending before this Court is a complaint (the "Complaint") filed by Tera Xtal Technology Corporation ("TXT") against GT Advanced Technologies Limited ("GTAT

---

[1] The Debtors in these chapter 11 cases, now jointly administered, are GT Advanced Technologies, Inc., case no. 14-11916; GT Equipment Holdings, Inc., case no. 14-11917; GTAT Corporation, 14-11919; GT Advanced Technologies Limited, case no. 14-11920; Lindbergh Acquisition Corp., case no. 14-11922; GT Sapphire Systems Group LLC, case no. 14-11923; GT Sapphire Systems Holding LLC, case no. 14-11924; GT Advanced Cz LLC, case no. 14-11925; GT Advanced Equipment Holding LLC, case no. 14-11929.

1

Ltd."), one of several debtors in these jointly administered Chapter 11 proceedings (the "Debtors"). In its Complaint, TXT asks this Court to rule that its claim against GTAT Ltd. arising from a monetary award issued in prepetition arbitration proceedings is not merely a general unsecured claim in this bankruptcy case. TXT instead would have the Court determine either that GTAT Ltd. holds a sum of money in trust for TXT's benefit, which should be immediately returned to TXT, or, in the alternative, that TXT has a lien on certain of the Debtors' assets. GTAT Ltd. has moved to dismiss the adversary proceeding on grounds that the arbitration bars the relief sought in the Complaint under principles of *res judicata*.

I.  FACTS AND TRAVEL OF THE CASE

In early 2011, GTAT Ltd.[2] entered into three agreements for the sale of a total of 98 advanced sapphire furnaces (the "Furnaces") to TXT[3] (the "Supply Agreements").[4] Under the Supply Agreements, TXT was required to pay for the Furnaces in three installments, with final payment contingent upon the Furnaces meeting certain performance criteria. By early 2012, GTAT Ltd. had delivered 30 Furnaces to TXT (the "Delivered Furnaces"). TXT paid the contractual amount due to GTAT Ltd. upon delivery with regard to the 30 Delivered Furnaces (with the remaining balance due after a

---

[2] GTAT Ltd. is a Hong Kong corporation with its principal place of business in Merrimack, New Hampshire.

[3] TXT is a Taiwanese corporation with its principal place of business in Hsinchu, Taiwan.

[4] The Supply Agreements are substantially identical, differing mainly as to the number of furnaces covered by each particular agreement and the price to be paid per Furnace.

2

determination that the Furnaces performed to contractual standards). At that time, TXT also provided GTAT Ltd. with a $16,662,450 payment (the "Deposit") toward the 68 Furnaces remaining to be delivered (the "Undelivered Furnaces").

After receipt of the Delivered Furnaces, however, a dispute arose between the parties, based, *inter alia*, on TXT's assertion that the Delivered Furnaces failed to meet the performance criteria set forth in the Supply Agreements. The relationship between the parties soured and TXT eventually declined to purchase the Undelivered Furnaces. GTAT Ltd. believed that TXT had wrongfully terminated the contract and, in November 2012, commenced an arbitration proceeding against TXT through the International Centre for Dispute Resolution (the "Tribunal"; the "Arbitration"). In the Arbitration, GTAT Ltd. asserted that TXT had wrongfully breached the Supply Agreements and accordingly sought full payment of the contractual balance due, including payment for the Undelivered Furnaces. TXT counterclaimed, demanding a refund of the amounts paid for the underperforming Delivered Furnaces, a return of the Deposit made on the Undelivered Furnaces, and consequential damages.

In August 2014, the Tribunal issued a written decision in turn accepting and rejecting various of the parties' claims against each other (the "Decision"). Material to the dispute before this Court, the Tribunal ultimately concluded that: (1) TXT was entitled to a refund for 10 of the Delivered Furnaces because they failed to meet the contractual performance criteria; (2) TXT had accepted the remaining 20 Delivered Furnaces and was obligated to GTAT Ltd. for the contractual balance due on those units; (3) GTAT Ltd., and not TXT, had repudiated the contract and TXT therefore had no obligation to pay

3

GTAT Ltd. for the Undelivered Furnaces; and (4) GTAT Ltd. was obligated to return the Deposit made on the Undelivered Furnaces.  After accounting for the various offsets, the Tribunal ordered GTAT Ltd. to pay TXT a total of $20,967,450 plus interest (the "Final Award").

On August 30, 2014, the parties entered into a settlement agreement for payment of the award (the "Settlement Agreement").  The Settlement Agreement provided that GTAT Ltd. would satisfy the Final Award by, *inter alia*, paying TXT a total of $24,493,318 in two installments: $7,000,000 on September 2, 2014 and the remaining $17,493,318 on September 29.  And in the event that GTAT Ltd. defaulted, the Settlement Agreement provided that TXT could enforce the Final Award by filing an action in the New York state courts to obtain a judgment by confession[5] and to "seek damages for breach of th[e] Settlement Agreement." Settlement Agreement, Complaint Ex. C, p.6 ¶ 4.2, ECF No. 1.

GTAT Ltd. made the first payment due under the Settlement Agreement, but failed to timely pay the remaining amount due on the Final Award.  And on October 6, 2014, GTAT Ltd. and several of its affiliates commenced voluntary Chapter 11 cases (now jointly administered) under the United States Bankruptcy Code.[6]  Disappointed by GTAT Ltd.'s failure to pay the Final Award in full, TXT filed the instant Complaint, initiating an adversary proceeding in the Debtors' bankruptcy case (the "Adversary Proceeding")[7] and

---

[5] In connection with the Settlement Agreement, GTAT executed an "Agreed Form of Affidavit for Judgment By Confession" to be held in escrow pending full satisfaction of the Final Award or a default under the Settlement Agreement.

[6] See 11 U.S.C. § 101 et seq. (the "Bankruptcy Code" or the "Code").  All statutory references are to the Bankruptcy Code unless otherwise indicated.

[7] After TXT filed the Complaint, it entered into an assignment of claims agreement with Citigroup

4

seeking a declaration that TXT's claim against GTAT Ltd. is not a general unsecured claim. Instead, TXT asks this Court to rule that the Deposit is not property of the bankruptcy estate because it is held by GTAT Ltd. in trust for the benefit of TXT. Alternatively, TXT seeks a determination that its claim is secured by a lien on certain advanced sapphire furnaces remaining in the Debtors' possession postpetition.[8] GTAT Ltd. responded to the Complaint with its Motion to Dismiss and, after a hearing on the motion and TXT's objection thereto (the "Objection"), the Court took the matter under advisement.

II.   POSITIONS OF THE PARTIES

In its five-count Complaint, TXT relies on a variety of legal theories to justify its claims that TXT is entitled to either a return of the Deposit or possession of (or a lien on the proceeds from) certain furnaces. In support of its primary contention that it is entitled to an immediate return of the Deposit, TXT argues that the Deposit is not property of the bankruptcy estate because the Deposit is held by GTAT Ltd. in either an express, resulting, or constructive trust for the benefit of TXT.[9] Alternatively, TXT argues that it is

---

Financial Products Inc. ("Citi") and Citi has been joined as a party plaintiff in the Adversary Proceeding. Because TXT remains a party to the proceeding, however, and to avoid confusion, this Memorandum will continue to refer to the plaintiffs as "TXT."

[8] Since the filing of the main bankruptcy case and this Adversary Proceeding, the Debtors have entered into various settlements and agreements with other parties which affect the disposition of sapphire furnaces remaining in the Debtors' possession. In each instance, TXT has been granted a replacement lien on a number of the Debtors' furnaces, but only to the extent the Court finds merit in TXT's claims that it has a valid lien on those furnaces.

[9] See Complaint, Count I: Recovery of the Deposit Because GTAT Ltd. holds the Deposit in an Express or Resulting Trust for TXT; and Count II: Recovery of the Deposit Because GTAT Ltd. Holds the Deposit in Constructive Trust for TXT.

entitled to possession of a number of the Debtors' furnaces (or payment from the proceeds of their disposition) equal to the number of furnaces for which the Deposit would have equaled payment in full.  TXT says it is entitled to those furnaces (or their proceeds) because it is a buyer in the ordinary course under the Uniform Commercial Code, the Debtors hold those furnaces in a constructive trust for the benefit of TXT, and because TXT has an equitable lien on those furnaces.[10]

In its Motion to Dismiss, GTAT Ltd. responds in detail to each count of the Complaint, asserting that, on the legal merits, each count should be dismissed.  At the fore of its many arguments, however, is GTAT Ltd.'s assertion that the Adversary Proceeding should be dismissed in its entirety because all of TXT's claims are barred by the *res judicata* effect of the Tribunal's Decision and Final Award.  GTAT Ltd. argues that the claims asserted by TXT in this Adversary Proceeding all arise from the same underlying facts that gave rise to TXT's claims in the Arbitration.  Applying New York law (which, GTAT Ltd. says, governs the present dispute), GTAT Ltd. would have the Court conclude that all the issues raised by TXT, including the appropriate form of relief, cannot be relitigated here.  The only remedy contemplated by the Decision, GTAT Ltd. maintains, is an award of monetary damages; the Tribunal's ruling did not impose or create any trust or lien over the Deposit or specific furnaces.  Further, GTAT Ltd. notes that the Settlement

---

[10] See Complaint, Count III: Recovery of Undelivered Furnaces or the Proceeds Thereof by TXT as a Buyer in the Ordinary Course; Count IV: Recovery of the Furnaces because GTAT Ltd. Holds the Furnaces, or the Proceeds Thereof, in Constructive Trust for TXT, and TXT is Entitled to Recover the Furnaces or the Proceeds Thereof; and Count V: TXT has an Equitable Lien in the Furnaces, or the Proceeds Thereof.

Agreement similarly contemplates only the payment of monetary damages and also does not impose or create any trust or lien over the Debtors' property, even in the event of GTAT Ltd.'s default.  Accordingly, GTAT Ltd. says that TXT is bound by the Tribunal's Decision and is entitled only to payment of the Final Award, a claim which is now nothing more than a general unsecured claim in the Debtors' bankruptcy case.

TXT concedes that the Tribunal's Decision and the Final Award constitute a final judgment on the merits of the dispute between the parties, but argues that *res judicata* does not bar the relief it seeks from this Court.  Under TXT's reading of relevant case law, only those issues actually decided by the Tribunal have *res judicata* effect on subsequent litigation between the parties.  TXT posits, therefore, that this Court has jurisdiction and authority to determine whether GTAT Ltd. holds the Deposit in trust for TXT and/or whether TXT can assert a valid lien over the Debtors' furnaces.  In addition, TXT maintains that GTAT Ltd.'s failure to return the Deposit, its default under the Settlement Agreement, and GTAT Ltd.'s eventual bankruptcy filing all constitute subsequent conduct that is not subject to the *res judicata* effect of the Final Award.

III.   DISCUSSION

Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6), made applicable to adversary proceedings by Fed. Rule of Bankr. P. 7012(b), if the complaint fails to state a claim upon which relief can be granted.  In evaluating the Complaint, this Court "must accept the complaint's allegations as true, indulging all reasonable inferences in favor of [TXT]." Kiely v. Raytheon Co., 105 F.3d 734, 735 (1st Cir. 1997).  The Court may consider

not only the allegations made in the Complaint, but also the documents attached to the Complaint, see Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71-72 (1st Cir. 2014) – here, the Supply Agreements, Decision and Final Award, and Settlement Agreement.[11] If it is clear that TXT cannot, as a matter of law, recover under any set of facts alleged in the Complaint, the Adversary Proceeding must be dismissed.

New York law governs the issues *sub judice*.  The Supply Agreements provided that the legal relations between the parties would be governed by New York law, the Tribunal applied New York law in the Arbitration proceedings (which were conducted in New York), and the Settlement Agreement also provided that New York law would govern its interpretation and enforcement.  As this Court has previously noted, "[c]ontractual stipulations concerning choice of law clauses ordinarily are honored;" "[b]ankruptcy courts have . . . upheld choice of law provisions so long as the law was reasonably chosen by the parties" and the application of the chosen law does not seriously conflict with public policy.  N. Parent, Inc. v. Cotter & Co. (In re N. Parent, Inc.), 221 B.R. 609, 619-20 (Bankr. D. Mass. 1998).  Notwithstanding TXT's belated attempt to cast doubt on the application of New York law to the present dispute,[12] this Court is satisfied that New York law should

---

[11] Out of caution in light of confidentiality provisions in the Supply Agreements and the Decision and Final Award, TXT filed those documents with the Complaint, but under seal.  TXT contemporaneously filed a "Motion to Determine Non-Confidentiality of the Arbitration Award and Supply Agreements and Temporarily Seal Documents Pending the Court's Ruling on Confidentiality," which motion has been continued generally pending this Court's ruling on the Motion to Dismiss.  However, the Complaint and the parties' pleadings refer to portions of the Tribunal's Decision either summarily or by quoting relevant but commercially innocuous statements made therein.  Accordingly, the Court has done the same, discussing in this Memorandum only those portions of the Decision which are referred to in the publicly-filed documents (which, fortunately, are the only portions relevant to the issues here).

[12] In footnote 3 to its Objection, TXT argues that the Motion to Dismiss "mischaracterizes TXT's

be applied here.  The parties have conducted all their transactions under the auspices of New York law by including choice-of-law provisions in their agreements and by physically conducting the Arbitration in New York.  And neither party has argued that New York law poses a serious conflict with any public policy.  Accordingly, the Court finds that the parties' choice of law should be enforced and will proceed with its analysis under relevant New York law.  See Leon v. Shmukler, 999 F. Supp. 2d 179, 188 (E.D.N.Y. 2014) (in ruling on a motion to dismiss on grounds that earlier arbitration precluded relitigation of issues raised in a complaint later filed in federal court, the federal court applies the law that governed the arbitration proceedings); see also W. Md. Wireless Connection v. Zini, 601 F. Supp. 2d 634, 640 (D. Md. 2009).

      Under New York law, arbitration awards, even those not judicially confirmed, have the same preclusive effect on subsequent litigation as do final court judgments.  Jacobson v. Fireman's Fund Ins. Co., 111 F.3d 261, 266 n.6, 267-68 (2d Cir. 1997); Pinnacle Env't Sys, Inc. v. Cannon Bldg of Troy Assocs., 305 A.D.2d 897, 898 (N.Y. App. Div. 2003).  TXT's reliance on Chestnut Hill Dev. Corp. v. Otis Elevator Co. for the proposition that the preclusive effect of an arbitration award extends only to issues actually decided is misplaced, as that case applied Massachusetts law.  See 739 F. Supp. 692, 697 (D. Mass.

---

allegations of applicable law in the Complaint."  TXT acknowledges that it stated in the Complaint that "New York law governs the interpretation and enforcement of the Supply Agreement, the Final Award, and the Arbitration Settlement," but then makes the cryptic statement that "[o]n procedural or purely legal matters, the applicable law is less clear."  Mem. in Support of Obj. p.5 fn. 3, June 3, 2015, ECF No. 48.  Given the ambiguity of this pseudo-assertion and the lack of any hint as to which other law *should* apply, the Court finds that, regardless of the substantive legal reasons why New York law should apply here, TXT has essentially waived any argument that the law of any jurisdiction other than New York law should apply.  See, e.g., In re Fraden, 317 B.R. 24, 35 & n. 25 (Bankr. D. Mass. 2004).

1990). In contrast, under New York law, the *res judicata* effect of an arbitration award "prevents parties from re-litigating issues in subsequent litigation that were *or could have been* litigated in a prior action," Leon v. Shmukler, 999 F. Supp. 2d at 188 (emphasis supplied).[13]

In determining which issues "were or could have been litigated," the New York Court of Appeals has stated that:

> [New York] has adopted the transactional analysis approach in deciding *res judicata* issues. . . . [O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based on different theories or if seeking a different remedy.

O'Brien v. City of Syracuse, 429 N.E.2d 1158, 1159 (N.Y. 1981) (internal citation omitted). "[T]his transactional test focuses on the facts at the heart of the two actions," Mahmood v. Research in Motion Ltd., 905 F. Supp. 2d 498, 504 (S.D.N.Y. 2012), aff'd 515 Fed. Appx. 891 (Fed. Cir. June 18, 2013), and determines whether the same "factual grouping" is involved, O'Brien, 429 N.E. 2d at 1160, "whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first," Prime Mgmt. Co., Inc. v. Steinegger, 904 F.2d 811, 816 (2d. Cir. 1990).

Here, each count of the Complaint is based on the same facts that were presented to the Tribunal in the Arbitration. TXT attempts to take the claims outside the relevant

---

[13] In some jurisdictions, the term *res judicata* is a broad term that encompasses the doctrines of both claim preclusion and issue preclusion. See, e.g., Giragosian v. Ryan, 547 F.3d 59, 63 (1st Cir. 2008) ("In Massachusetts, res judicata encompasses both claim preclusion and issue preclusion."). The cases cited in this Memorandum which apply New York law, however, are consistent in using the term *res judicata* only when speaking of claim preclusion (the doctrine applicable here). See, e.g., Jacobson, 111 F.3d at 265; Leon v. Shmukler, 992 F. Supp. 2d at 188; Steinegger, 904 F.2d at 815-16; Pinnacle, 305 A.D.2d at 898; O'Brien, 429 N.E. 2d at 1159. In keeping with the applicable New York case law, this Court also uses the term *res judicata* to refer only to claim preclusion.

10

underlying series of transactions by bolstering its arguments with reference to statements made by the Tribunal in the Decision in support of the Final Award.  But all the counts of the Complaint ultimately require reference to and reliance upon the same facts that formed the basis for the claims submitted by TXT to the Tribunal – i.e., the parties' execution of the Supply Agreements, the payment of the Deposit, the ultimate failure of the Delivered Furnaces to adequately perform, and GTAT Ltd.'s failure to refund any amounts paid to TXT despite GTAT Ltd.'s breach of contract.  And based on those facts, the Tribunal issued the Final Award, requiring GTAT Ltd. to pay TXT over $24 million in damages.  Nowhere in the Decision does the Tribunal indicate that other forms of relief were granted to TXT; the Tribunal does not declare that the Deposit is held in a trust of any sort, nor does it suggest that, in lieu of GTAT Ltd. paying money damages, TXT could assert a lien over furnaces owned by GTAT Ltd. or any of the affiliated Debtors.

While TXT has argued that the relief requested in the Complaint can be granted based on "subsequent events" that are not subject to preclusion,  see Steinegger, 904 F.2d at 816 (previous judgment does not preclude claims based on solely on postjudgment conduct), a simple reading of the Complaint compels the conclusion that there are none.  As described above, each of the counts undeniably requires an interpretation of the same facts that were at issue in the Arbitration.  Neither the fact that GTAT Ltd. ultimately failed to pay the Final Award in full, nor the fact that TXT is stayed by the bankruptcy case filing from further pursuing an action to collect on the Final Award constitute subsequent events that would allow this Court to impose new remedies in aid of TXT's recovery.  Rather, GTAT's failure to pay the award in full would, absent the

bankruptcy case filing, merely entitle TXT to commence a collection action to recover the remaining amount owed. It would not entitle TXT to seek alternative relief founded on the same facts that gave rise to the underlying claims.

It is unclear whether TXT requested alternative forms of recovery during the Arbitration, but the answer is immaterial. Regardless of whether TXT requested any remedies apart from a monetary award and was denied those remedies by the Tribunal or whether TXT failed to request alternative remedies at all, the point is that the alternative forms of relief now sought from this Court *could* have been raised during the Arbitration. Because all of TXT's claims raised in this Adversary Proceeding "'aris[e] out of the same factual grouping' as those . . . advanced in the [Arbitration], and [the] present suit merely asserts 'different legal theories' to obtain 'additional relief' from the very same defendant," they are barred under the doctrine of *res judicata*. Jacobson, 111 F.3d at 265.

IV.    CONCLUSION

For all the foregoing reasons, this Court finds and rules that each count of the Complaint is precluded by the *res judicata* effect of the Tribunal's Decision and Final Award. Accordingly, the Motion to Dismiss will be GRANTED. An order in conformity with this Memorandum shall issue forthwith.

DATED:  December 29, 2015

_____
Henry J. Boroff
United States Bankruptcy Judge